JOINT HOLDINGS & TRADING, LIMITED,
Plaintiff

v.

P. J. BRENNAN, INC. OF SAMOA,
P. J. BRENNAN, INC.,
P. J. BRENNAN and PETER BRUDER,
Defendants

No. 2648-1973

High Court of American Samoa

Civil Jurisdiction, Trial Division

October 11, 1974

I

FINDINGS OF FACTS

1. Peter J. Brennan, Inc. is a corporation incorporated under the laws of the State of North Carolina with its principle [sic] place of business in Charlotte, North Carolina.

2. Peter J. Brennan, Inc. of American Samoa is a corporation incorporated under the laws of the State of North Carolina with its principle [sic] place of business in the Territory of American Samoa.

3. At all relevant times herein, both Peter J. Brennan, Inc. and Peter J. Brennan, Inc. of American Samoa ("the Brennan corporations") were doing business in the Territory of American Samoa.

4. Peter J. Brennan is the President of the Brennan corporations. At all relevant times herein Peter Bruder had the business position of Vice President of these corporations and was responsible for manufacturing and production for the Brennan corporations.

5. Joint Holdings and Trading Company, Ltd. ("Joint Holdings"), is a company duly registered in the Crown Colony of Hong Kong, and at all times relevant herein was doing business in Taiwan, Republic of China. Tristate Trading and Investment Company, Ltd. ("Tristate"), is a company associated with Joint Holdings.

6. Thomas C. Hood is the Director of Tristate and Joint Holdings. During the relevant times herein he was responsible for the business operations of these companies. Jack Tang is the President of Tristate and of Joint Holdings, and was so at all relevant times herein.

7. In early 1972 the Brennan corporations began obtaining partially assembled men's trousers from a non-party corporation in Taiwan, and then completing those trousers in their American Samoa plant for importation and sale in the United States. During July of 1972, Peter J. Brennan, representing the Brennan corporations, began discussions with representatives of Joint Holdings concerning the possibilities of those concerns working together to provide trousers for the American market. In particular, representatives of the Brennan corporations and Joint Holdings discussed the possibility of Joint Holdings selling the

Brennan corporations trousers that had been partially assembled in Taiwan by Joint Holdings. The Brennan corporations were to finally assemble the trousers in the American Samoa plant for importation and sale in the United States.

8. Joint Holdings was interested in this arrangement because it would allow them to enter what they felt would be a highly profitable new field. The fact that the trousers could enter the United States duty free if half of their value was added in American Samoa was a very important consideration to Joint Holdings in deciding to make these arrangements.

9. Brennan corporations were primarily interested in dealing with Joint Holdings because they expected rapid growth and expansion and needed credit terms more favorable than they were able to receive elsewhere. In particular, the Brennan corporations wanted to purchase their partially assembled trousers without the obligation of providing an immediate letter of credit.

10. After several meetings, it was agreed by representatives of both parties that Joint Holdings would provide partially assembled trousers for the Brennan corporations' plant in American Samoa. These trousers were to be provided at the same price that was offered to the Brennan corporations by an alternative source of supply, Marubeni Corporation. Joint Holdings agreed that the terms of payment would be that the full invoice price would be due 120 days after shipment of the goods, although the shipment did not have to be secured by letters of credit. It was also agreed that the trouser manufacturing plant would be installed in a building owned by Tristate which laid vacant at Kaoshiung, Taiwan.

11. Since Joint Holdings had no experience in this type of operation, it was agreed that Mr. Bruder, a representa-

tive of the Brennan corporations, would work with Joint Holdings in establishing the plant at Kaoshiung.

12. In establishing the plant, it was agreed that some of the needed equipment would be ordered and provided by Joint Holdings while other such equipment would be ordered and provided by the Brennan Corporation.

13. In late 1972 Mr. Bruder, with representatives of Joint Holdings, worked out a tentative production schedule that called for the first pairs of partially assembled trousers to be ready in November of 1972. This schedule was not viewed by either party as being more than an estimate or a goal for the operation.

14. All parties attempted to obtain that equipment which they had agreed to obtain for the plant. Due to shipping problems, customs problems, production problems, and other problems not the fault of any party, much of the equipment necessary to begin production of the partially assembled trousers arrived in Kaoshiung much later than had been expected.

15. As a result of the late start up of the plant, trouser production was greatly delayed and the production goals referred to in Finding number 13 above were not met.

16. Throughout all of the discussions and agreements mentioned above Mr. Brennan and Mr. Bruder acted as representatives of the Brennan corporations and they never acted in a personal capacity.

17. The shipment of the partially assembled trousers from the Joint Holdings plant in Kaoshiung to the Brennan facility in American Samoa began in April of 1973 when 29,978 pair were shipped via air to Pago Pago.

18. The shipment referred to in Finding number 17 was released to the Brennan corporations with an invoice price F.O.B. Kaoshiung. Each subsequent shipment was also provided to the Brennan corporations F.O.B. Kaoshiung, and the Brennan corporations did not object to this form of

billing until the commencement of this action. Transportation for each shipment from Kaoshiung to Pago Pago was arranged by and paid for by the Brennan corporations.

19. While the original credit terms between Joint Holdings and the Brennan corporations did not provide for any letter of credit to support the shipments, there was no agreement that the line of credit extended by Joint Holdings to the Brennan corporations would be infinite. While no definite limit was set on the credit to be extended by Joint Holdings to the Brennan corporations, the course of conduct throughout all of the negotiations indicated that only a reasonable amount of credit was to be extended. By August of 1973 Joint Holdings had good reasons to question the financial stability of the Brennan corporations because Joint Holdings had not received the audited statements which they had constantly requested from the Brennan corporations, and because they had been made aware of difficulties the Brennan corporations were having in moving the American Samoa trousers into the United States without payment of duty. It was thus reasonable for Joint Holdings to restrict the line of credit extended to the Brennan corporations at that time, and the limit amount of $350,000 that was imposed was reasonable.

20. On August 16, 1973 Joint Holdings shipped, via Korean Airlines, 56,084 pair of trousers from Kaoshiung to Brennan in American Samoa, and these trousers had a value in excess of $180,000.

21. The Brennan corporations did not, and have not to this day, paid Joint Holdings for these trousers, although payment became due in December of 1973.

22. During the time Joint Holdings prepared and sold partially assembled trousers to the Brennan corporations the price charged to the Brennan corporations and fabric usage at the Kaoshiung plant were reasonably close to the original estimates for such, and were reasonable.

■■■■■■■■■■■■

## II

### CONCLUSIONS OF LAW

■ 1. There is now due, owing, and unpaid from defendants Peter J. Brennan, Incorporated and Peter J. Brennan, Incorporated, of American Samoa, to the plaintiff, for partially assembled trousers delivered to the Brennan corporations, a sum in excess of $180,000.

■ 2. Mr. Peter J. Brennan and Mr. Peter Bruder, at all relevant times, represented the Brennan corporations and not themselves personally, and thus are not personally liable for any debts that have arisen as a consequence of the agreements referred to above.

■ 3. The hopes, expectations, and goals of the parties to this action, insofar as they included the production schedule discussed in Finding of Fact number 14 above, and the credit terms discussed in Finding of Fact number 19 above, were never part of any binding contract between the parties. Thus, Joint Holdings' failure to meet the production expectations and its modification of the credit terms cannot constitute the breach of any contract.

4. Any failure to meet the expectations of the parties was not a consequence of the negligence of any of the parties to the arrangements discussed above.

■ 5. If Mr. Peter Bruder did provide a service to Joint Holdings in assisting the set-up of the Kaoshiung pants plant, the defendants have failed to offer any evidence whatsoever to establish the reasonable value of this service, and thus the Court cannot calculate the quantum of benefit, if any, derived by Joint Holdings from such services.

6. Plaintiffs did not and have not committed any acts that constitute fraud, corporate libel and slander, malicious attachment, abuse of process and malicious prosecution, or any other acts that are in reckless and wanton disregard of

and indifference to the right of the defendants to this action.

## III

### JUDGMENT

WHEREFORE, Defendants Peter J. Brennan and Peter Bruder are dismissed from this action, and JUDGMENT IS RENDERED for the plaintiff Joint Holdings and Trading Co., Ltd., and against defendants Peter J. Brennan, Inc., and Peter J. Brennan, Inc. of Samoa, in the full amount prayed for in the complaint, $180,000. Further, pursuant to 11 A.S.C. 6213 (1973), judgment is hereby entered against Peter J. Brennan, Inc., Peter J. Brennan, Inc. of Samoa, and the Insurance Company of North America.

It is FURTHER ORDERED AND ADJUDGED that each and every counterclaim submitted by each defendant should be, and hereby is, denied.